**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

|  |  |
|---|---|
| MALLORY B. FACEY, | No. 2:19-CV-1596-DMC |
| Plaintiff, | |
| v. | <u>MEMORANDUM OPINION AND ORDER</u> |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, <u>see</u> ECF Nos. 7 and 8, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the Court are the parties' briefs on the merits, <u>see</u> ECF Nos. 12 and 13.

For the reasons discussed below, the Commissioner's final decision is reversed, and the matter will be remanded for further proceedings consistent with this opinion.

/ / /

/ / /

/ / /

/ / /

1

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

| | |
|---|---|
| Step 1 | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; |

1                     if the claimant has such an impairment, the claimant is
presumed disabled and the claim is granted;

2

3       Step 4       If the claimant's impairment is not listed in the regulations,
determination whether the impairment prevents the
claimant from performing past work in light of the
4                       claimant's residual functional capacity; if not, the claimant
is presumed not disabled and the claim is denied;

5

6       Step 5       If the impairment prevents the claimant from performing
past work, determination whether, in light of the claimant's
residual functional capacity, the claimant can engage in
7                       other types of substantial gainful work that exist in the
national economy; if so, the claimant is not disabled and
8                       the claim is denied.

9            See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

10           To qualify for benefits, the claimant must establish the inability to engage in

11 substantial gainful activity due to a medically determinable physical or mental impairment which

12 has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42

13 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment

14 of such severity the claimant is unable to engage in previous work and cannot, considering the

15 claimant's age, education, and work experience, engage in any other kind of substantial gainful

16 work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456

17 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See

18 Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

19           The claimant establishes a prima facie case by showing that a physical or mental

20 impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753

21 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant

22 establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant

23 can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335,

24 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v.

25 Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

26 / / /

27 / / /

28 / / /

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on August 19, 2015. <u>See</u> CAR 10.[1] Plaintiff claims disability began on August 19, 2015. <u>See id.</u> Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on January 24, 2018, before Administrative Law Judge (ALJ) Jean R. Kerins. In an August 3, 2018, decision, the ALJ concluded plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): cyclical vomiting syndrome; cannabinoid hyperemesis syndrome; and seizure disorder;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: light work; the claimant is limited to stand and walking four out of eight hours, and sitting six our of eight hours; she can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; she is limited to frequent balancing, occasional stooping, frequent kneeling and crouching, and occasional crawling; she must avoid even moderate exposure to hazards such as machinery and heights;
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> See <u>id.</u> at 12-25.

After the Appeals Council declined review on June 25, 2019, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]     Citations are the to the Certified Administrative Record (CAR) lodged on December 12, 2019, <u>see</u> ECF No. 11.

4

**III. DISCUSSION**

In her opening brief, Plaintiff argues: (1) the ALJ failed to consider whether Plaintiff's seizure disorder meets or medically equals Listing 11.02B; (2) the ALJ improperly relied on the outdated opinion of a non-examining agency doctor; (3) the ALJ erred in determining Plaintiff's statements and testimony were not credible; and (4) the ALJ failed to properly consider lay witness evidence from Plaintiff's husband and daughter.

**A.   Listing of Impairments**

As to the ALJ's findings at Step 3, Plaintiff argues: (1) the ALJ failed to make specific findings regarding Listing 11.02B; and (2) the ALJ failed to properly evaluate difficulties Plaintiff had due to cyclical vomiting syndrome. Although the Court concludes that it would not normally be error for the ALJ to neglect to explicitly list why Plaintiff did not satisfy the criteria under Listing 11.02B, the Court determines that the ALJ *did* here err in failing to develop the record regarding Plaintiff's cyclical vomiting syndrome.

**1.   Evaluating the Listings**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. 20 C.F.R. § 404.1520(d); Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d); see Lester v. Chater, 81 F.3d 821, 828 (9th Cir. 1995). In meeting or equaling a listing, each requirement of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

The claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his or her impairments meet or equal a particular listing. Bowen v. Yuckert, 482 U.S 137, 146, n. 5 (1987). If the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how his or her combined impairments equal a listing. Lewis v. Apfel, 236 F.3d 503, 517 (9th Cir. 2001).

/ / /

/ / /

1

**2.      Listing 11.02B**

2           At Step 3, the ALJ determined that Plaintiff's impairments do not, singly or in

3    combination, meet or medically equal any impairment outlined in the Listings, specifically

4    Listings 5.00 and 11.00. <u>See</u> CAR 16. The ALJ specifically stated:

5               The severity of the claimant's physical impairments, considered singly and
6           in combination, does not meet or medically equal the criteria of any
            impairment listed in sections 5.00 and 11.00, as demonstrated by the
7           objective findings discussed below. No treating or examining physician
            recorded findings equivalent in severity to the criteria of any listed
8           impairment, nor does the evidence show medical findings that are the same
            or equivalent to those of any listed impairment.

9    <u>Id.</u>

10          Plaintiff contends the ALJ failed to analyze her case under Listing 11.02B, which

11   relates to epilepsy. Listing 11.02B requires the following: "Dyscognitive seizures

12   (<u>see</u> 11.00H1b), occurring at least once a week for at least 3 consecutive months (<u>see</u> 11.00H4)

13   despite adherence to prescribed treatment (<u>see</u> 11.00C)." 20 C.F.R. pt. 404, subpt. P, app. 1, §

14   11.00 (Neurological – Adult).

15          "Dyscognitive seizures" are defined as:

16              <u>Dyscognitive seizures</u> are characterized by alteration of consciousness
            without convulsion or loss of muscle control. During the seizure, blank
17          staring, change of facial expression, and automatisms (such as lip
            smacking, chewing or swallowing, or repetitive simple actions, such as
18          gestures or verbal utterances) may occur. During its course, a dyscognitive
            seizure may progress into a generalized tonic-clonic seizure (<u>see</u>
19          11.00H1a).

20   20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b.

21          With respect to counting seizures over the required periods of time specified in

22   Listing 11.02B, the regulations provide:

23              <u>Counting seizures</u> The period specified in 11.02A, B, or C cannot begin
            earlier than one month after you began prescribed treatment. The required
24          number of seizures must occur within the period we are considering in
            connection with your application or continuing disability review. When we
25          evaluate the frequency of your seizures, we also consider your adherence to
            prescribed treatment (<u>see</u> 11.00C). . . .
26

27   20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H4.

28

                                            6

The regulations further provide as to counting seizures during the specified time period that the Commissioner will: (a) count multiple seizures occurring in a 24-hour period as one seizure; (b) count status epilepticus (a continuous series of seizures without return to consciousness between seizures) as one seizure; (c) count a dyscognitive seizure that progresses into a generalized tonic-clonic seizure as one generalized tonic-clonic seizure; (d) not count seizures that occur during a period when the claimant is not adhering to prescribed treatment; and (e) not count psychogenic nonepileptic seizures or pseudoseizures under 11.02. See id.

Finally, the regulations state that the phrase "'[d]espite adherence to prescribed treatment' means that you have taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00C.

### 3.     Specific Findings

Plaintiff contends the ALJ failed to make specific findings under Listing 11.02B. According to Plaintiff, the ALJ failed to address any of the 11.02B requirements, such as the type of seizures Plaintiff had, the frequency of her seizures, and whether Plaintiff followed her prescribed treatment. ECF No. 12-1, pg. 15. Instead, the ALJ focused on normal neurological findings and laboratory studies not required under Listing 11.02B. Id.

Plaintiff also contends that the facts summarized by the ALJ "support a finding that Listing 11.02B is met in this case. (Tr. 18-22)." Id. Plaintiff listed evidence that she contends supports a finding that Listing 11.02B is satisfied. Id. She contends that the ALJ did not appropriately state why the evidence did not satisfy Listing 11.02B. Id. Plaintiff's listed the following evidence:

- "Medical records prior to the alleged onset date noted a history of cyclical vomiting and seizures as well as emergency room visits for cyclical vomiting symptoms." (Tr. 18).

- "Emergency room records on January 30, 2016 showed she presented with complaints of abdominal pain, nausea, vomiting and loose stools for four days as well as being unable to keep her Keppra down[.]" Id. (citing (Tr. 548)).
- "Emergency room visits in May 2016 showed similar findings" Id. (citing (Tr. 529, 535-36)).

- "She presented with her primary provider on September 20, 2016 for a follow up after being at the hospital that day for vomiting and seizures. The physical examination" noted that she had a "chronically ill and too thin appearance as well as neck tenderness[.]" *Id.* (*citing* (Tr. 680-81)).

- "Emergency room records on June 27, 2016 showed she presented with cyclic vomiting flare for two days with abdominal pain and diarrhea as well as reports of a grand mal seizure that day because she had been unable to keep her seizure medication down[.]" *Id.* (*citing* (Tr. 518)).

- "[E]mergency room records on September 1, 2016 noted her spouse reported she had a grand mal seizure while in triage that lasted forty- five seconds." *Id.* (*citing* (Tr. 573)).

- At a "medical visit with her primary provider on October 13, 2016, she reported no bad seizures since her last emergency room visit but that she had small ones once or twice a week with constant headaches[.]" *Id.* (*citing* Tr. 676)).
- "She did present at the emergency room on August 12, 2017 with complaints of a seizure-like episode that occurred earlier in the afternoon that lasted for ten minutes as well as multiple episodes of vomiting over the prior five days." *Id.* (*citing* Tr. 774)).

- "She presented again at the emergency room on August 14, 2017 with complaints of seizure and one episode of vomiting after taking Keppra as well as complaints of paresthesias in her left side" and a "physical examination showed generalized tenderness" (Tr. 21) (*citing* Tr. 769, 771)).

- "An examination on August 22, 2017, when she presented with persistent seizure activity for two hours, showed she was confused and post ictal[.]" *Id.* (*citing* Tr. 766)).

- "She returned to the emergency room on August 28, 2017 with complaints of seizures as well as anxiety and paranoia after[.]" *Id.* (*citing* Tr. 754)).

- "[N]otes showed she had several seizures while in the emergency room[.]" *Id.* (*citing* Tr. 755)).

- Another emergency room visit for seizures occurred on "January 17, 2018, when she reported having six seizures that day despite tolerating her anti-epileptic medications[.]" (Tr. 22) (*citing* (Tr. 864).

- She presented to the emergency room again on January 20, 2018 with complaints of vomiting and multiple grand mal seizures, stating she had not been able to keep down Keppra for two days. *Id.* (*citing* (Tr. 854)).

ECF No. 12-1, pgs. 15–17.

8

Defendant first replies that substantial evidence supports the ALJ's determination that Plaintiff did not have an impairment meeting or equaling the criteria under Listing 11.02B. ECF No. 13, pg. 14. Defendant then discusses the evidence that the ALJ summarized. Id. at 14–16. Most pointedly, Defendant responds that an ALJ does not need to specifically state what evidence supports their conclusion that a claimant's impairments did not meet or equal a listed impairment. Id. at 16–17. So long as the ALJ's determination is supported by an adequate statement of the foundations on which the factual conclusions are based (e.g., a summary and explanation of all the relevant evidence), the ALJ's decision may stand. ECF No. 13, pg. 16–17.

Defendant's point is a fair one. The Ninth Circuit has specifically held that it is unnecessary for an ALJ to explicitly state why a claimant failed to satisfy *every* different section of the listing of impairments. Gonzalez v. Sullivan, 914 F.2d 1197, 1200–01 (9th Cir. 1990). Though, the Court notes that the Ninth Circuit's holding does not stand for the proposition that an ALJ can permissibly provide *no* explanation. Laborin v. Berryhill, 692 F. App'x 959, 961–62 (9th Cir. 2017); James F. v. Saul, No. 1:19-CV-00486-CWD, 2021 WL 816729, at *6 (D. Idaho Mar. 3, 2021). An ALJ must still discuss and evaluate evidence that supports her conclusion, and a single, bare conclusion is likely insufficient. See, e.g., Laborin, 692 F. App'x at 961–62.

Here Plaintiff co argues that the ALJ failed in not explicitly explaining, at Step 3, why Plaintiff's impairments did not meet Listing 11.02B. Gonzalez, 914 F.2d at 1200–01; see Delgado v. Berryhill, No. 1:16–cv–00578–GSA, 2017 WL 2930847, at *5 (E.D. Cal. July 10, 2017). Gonzalez is instructive. There, an ALJ did not overtly state what evidence supported the conclusion that appellant's impairments did not meet or exceed the Listing of Impairments. Gonzalez, 914 F.2d at 1200. But the ALJ issued an extensive, five-page summary of the record. Id. at 1200. The ALJ summarized both the information from the doctors and the claimant's testimony. Id. The ALJ concluded the record substantiated some of the claimant's complaints. Id. The Ninth Circuit held that the ALJ's multi-page evaluation of the medical evidence was a satisfactory statement of the foundations on which the ALJ's factual conclusions were based (i.e., the ALJ's determination that the meet listing criteria). Id. at 1201.

The ALJ's opinion is similar here. CAR at 16–23. The ALJ did not, under Step 3, specifically state what evidence indicated Plaintiff did not meet or equal Listing 11.02B's criteria. CAR 16. But the ALJ did note that no treating or examining physician had recorded no equivalent findings, and that the medical evidence indicated no findings meeting or equaling the criteria. Id. Then, the ALJ spent six pages meticulously explaining the medical evidence. Id.

Under normal circumstances, the Court would be inclined to resolve whether, even if not ideally explicit, the ALJ's decision is sufficient under Gonzalez. See Gonzalez, 914 F.2d at 1200–01. But, as explained below, because the Court determines that the ALJ did not adequately resolve ambiguities in the record, she must also reassess the criteria under Listing 11.02B.

### 4.      Cyclical Vomiting Syndrome and its Effects

As stated just above, although the Court concludes that the ALJ's lack of an explicit explanation at Step 3 would not usually be error given the ALJ's extensive discussion of Plaintiff's medical history, the Court determines that the ALJ's decision cannot stand due to ambiguities and inadequacies in the evidence that required the ALJ to develop the record.

Plaintiff argues that the ALJ failed to properly address difficulties she experienced following prescribed treatment due to cyclic vomiting syndrome. According to Plaintiff:

> Another aspect of the case the ALJ should be instructed to properly consider relates to the interaction between Ms. Facey's conditions. The ALJ noted without discussion that Ms. Facey has vomited up her Keppra on multiple occasions. (Tr. 20-21). Vomiting up a drug and potentially preventing it from taking effect provides a valid basis for not being able to comply with prescribed treatment. Indeed, the ALJ related that an emergency room examiner in August 2017 noted Ms. Facey was "most likely having a seizure secondary to her running out of Clonazepam and throwing up her Keppra." (Tr. 21).
>
> Despite this evidence, the ALJ claimed that Ms. Facey's "seizures are under control when her medications are at a therapeutic level." (Tr. 23). This finding is neither substantiated by the record nor consistent with the ALJ's discussion of the evidence, discussed above. The ALJ's own summary of evidence also shows that emergency room visits for seizures continued to occur, such as on January 17, 2018, when six seizures were reported that day despite Ms. Facey tolerating her anti-epileptic medications. (Tr. 864); see also, e.g., (Tr. 474) (May 12, 2016 recounting that when Ms. Facey "misses medication [she] gets actual grand mal seizures" but "[e]ven with Keppra [she] has small seizure[s]"); (Tr. 847-48) (September 5, 2017, notation from Dr. Rabiee that Ms. Facey's "overall condition has been worse" since her last visit and describing her seizures as "intractable" and her convulsions refractory to the medication she was being given, leading to referral to Stanford Epilepsy Center).

1
2
3
4
5
6
> The ALJ's reliance on the presumed effectiveness of intravenous Keppra administered in an emergency room setting is also misplaced since intravenous administration was not established as a regular treatment option. Notably, on January 20, 2018, three days after she continued with seizures or seizure-like episodes despite tolerating her anti-epileptic medications, Ms. Facey presented to the emergency room again with complaints of vomiting and multiple grand mal seizures, noting that she had not been able to keep down Keppra for two days. (Tr. 854). The ALJ's assertion is thus undermined by the record which does [not] show that her condition can be controlled successfully by an anti-epileptic drug.

7   ECF No. 12-1, pgs. 17-18.

8        Defendant responds that Plaintiff does not explain how the above argument relates

9   to Listing 11.02B. ECF No. 13, pgs. 17–18. Although 11.02B requires adherence to prescribed

10  treatment, the ALJ did not find that Plaintiff failed to comply with any treatment. Id. at 17.

11  Rather, the ALJ found Plaintiff simply did not meet the Listing's criteria. Id.

12       The record is inadequate, or at best ambiguous, as to Plaintiff's ability to control

13  her seizures with Keppra. To the ALJ's credit, she highlights an instance from the record

14  indicating that intravenous Keppra had positive effects in managing Plaintiff's seizures while

15  Plaintiff was in the emergency room. CAR 21. But she notes a greater number of instances—at

16  least seven just in the summary—in which Plaintiff cannot keep her Keppra down because of her

17  vomiting. CAR 18–22. In closing her summary of the evidence, the ALJ then concludes a few

18  things about Keppra. CAR 23–24. She states both that a physician had attributed Plaintiff's

19  seizures to an inability to keep down Keppra, *and* that Plaintiff does not have seizures when she

20  receives intravenous Keppra. CAR 23. The ALJ noted that the Plaintiff's seizures are controlled

21  when her Keppra is kept at a therapeutic level. Id. The ALJ also stated that there were no

22  laboratory studies demonstrating whether Plaintiff's Keppra was consistently at therapeutic levels.

23  CAR 23–24.

24       The ALJ erred. First, it is unclear whether the ALJ relies on Keppra's ostensible

25  management of Plaintiff's seizures generally or only intravenously. See CAR 23–24. It is true that

26  that impairments controlled effectively with medication are not disabling for the purposes of

27  determining eligibility for SSI benefits. Warre v. Cmm'r of Soc. Sec. Admin., 439 F.3d 1001,

28  1006 (9th Cir. 2006); see Henry v. Saul, 835 F. App'x 924, 924 (9th Cir. 2021). But the ALJ did

1  not explain with sufficient precision her reasoning on how Plaintiff is able to control her seizures

2  with medication in the light of her cyclic vomiting. See CAR 23–24.

3          Even though the ALJ was not required at Step 3 to explicitly state why Plaintiff did

4  not meet every section of Listing 11.02B, that exception does not vitiate the ALJ's more general

5  duty to explain her reasoning in a manner that permits meaningful review. See Brown-Hunter v.

6  Colvin, 806 F.3d 487, 492 (9th Cir. 2015). The ALJ's most definitive conclusion was that

7  Plaintiff's seizures are controlled once her Keppra is at a therapeutic level. CAR 23. Be that as it

8  may, the ALJ did not resolve the apparent discrepancy between Plaintiff's inability to keep

9  Keppra in her stomach due to cyclic vomiting, and the possibility that Keppra can *only* manage

10  Plaintiff's seizures if Plaintiff receives it intravenously. Id. at 23–24. Nor does the ALJ actually

11  explain whether Plaintiff is able to access and follow an effective treatment of intravenous Keppra

12  such that a finding of disability within the meaning of the Social Security Act is precluded. See

13  Warre, 439 F.3d at 1006. The ALJ's lone cited instance of intravenous Keppra's positive

14  management of Plaintiff's seizures in the emergency room, and her brief conclusion, that Keppra

15  at therapeutic levels manages Plaintiff's seizures, does not lend itself to meaningful review under

16  the circumstances that the Court has identified.

17          Second, in the above regard, there is an open question of whether Plaintiff can

18  manage her seizures with Keppra either orally or intravenously. If she cannot, and her seizures

19  remain unchecked, that fact could affect Plaintiff's impairments and the determination of residual

20  functional capacity. E.g., 20 C.F.R. §§ 416.920, .945. There is thus an ambiguity in the record that

21  the ALJ was required to address. ALJs have a duty to further and fully develop the record that is

22  triggered by ambiguous evidence or to identify whether the record is inadequate to permit proper

23  evaluation of evidence. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011); Tonapetyan v.

24  Halter, 242 F.3d 1144, 1150 (9th Cir. 2001); Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir.

25  2001).

26          It is the ALJ's duty to investigate facts and develop the arguments both for and

27  against granting benefits. E.g., Sims v. Apfel, 530 U.S. 103, 111 (2000). An ALJ may not merely

28  assume the role of umpire; the ALJ must scrupulously and conscientiously probe into the matter

and actively explore for all relevant facts. See Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930–31 (9th Cir. 2014); Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006). If there is an ambiguity in the evidence or the record is inadequate for proper evaluation of evidence, the ALJ must undertake appropriate inquiry. See Tonapetyan, 242 F.3d at 1151 (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).

Although it is Plaintiff who bears the initial burden of proving disability, the burden of proof should not be confused with the ALJ's duty to develop an appropriate record where the record is otherwise ambiguous. See, e.g., Hilliard v. Barnhart, 442 F. Supp. 813, 817 (N.D. Cal. 2006). Too, a specific finding of ambiguity or inadequacy is not required to trigger the duty develop the record if the record itself establishes ambiguity or inadequacy. McLeod, 640 F.3d at 885. The ALJ may discharge the duty in any number of ways, including subpoenaing the claimant's physicians, submitting questions to physicians, continuing the hearing, or ordering a consultative examination. E.g., Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir. 1998); Hilliard, 442 F. Supp. 2d at 817.

In the instant case, the ALJ ostensibly relied heavily on Keppra's effects on Plaintiff's seizures in arriving at her determination of Plaintiff's residual functional capacity (and possibly in determining whether Plaintiff satisfied Listing 11.02B). CAR 23–24. That reliance is unwarranted because there is currently insufficient clarity as to Plaintiff's ability to control her seizures with Keppra. The ALJ concluded that Plaintiff can control her seizures with Keppra at therapeutic levels, but the record shows more complicated circumstances than that conclusion credits. The finding that Plaintiff can control her seizures with therapeutic levels of Keppra is not supported by the one cited instance of effective intravenous Keppra administered in an emergency room.[2] There is no indication or determination of whether Plaintiff has had regular access to intravenously administered Keppra as a treatment, and the discrepancy of whether Plaintiff can tolerate Keppra any other way due to cyclic vomiting remains outstanding. The ALJ herself

---

[2] To the extent that the record might offer additional evidence, it is unclear that the ALJ relied upon it and the Court can only uphold the ALJ's decision on the grounds upon which she relied. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). More generally, too, the Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Garrison, 759 F.3d at 1009.

1   conceded that there were no series of laboratory studies demonstrating whether Plaintiff's Keppra

2   had been maintained at therapeutic levels. CAR 23–24. The record as it stands is inadequate to

3   determine Plaintiff's seizures may be controlled medicinally, thereby precluding disability.

4   　　　The Court concludes that the evidence the ALJ relied on was incomplete and the

5   ALJ did not fully develop the record. Although the ALJ may consider the effects of medication on

6   Plaintiff's impairments, under the circumstances here the ALJ's reliance on ambiguous evidence

7   warrants remand. The Court will thus remand to the ALJ for further development of the record

8   concerning Plaintiff's ability to take Keppra and Keppra's effects on Plaintiff's seizures. The ALJ

9   must reassess Plaintiff's impairments and residual functional capacity as appropriate.

10   **B.** **Medical Opinions**

11   　　**1.** **Standard for Reviewing Medical Opinions**

12   　　　"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533

13   F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)). If an ALJ rejects a medical

14   opinion, they err by not doing so explicitly. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir.

15   2014). The ALJ also errs by failing to set forth sufficient reasons for crediting one medical

16   opinion over another. See id.

17   　　　Under the regulations, only "licensed physicians and certain qualified specialists"

18   are considered acceptable medical sources. 20 C.F.R. § 404.1513(a); see also Molina v. Astrue,

19   674 F.3d 1104, 1111 (9th Cir. 2012). Where the acceptable medical source opinion is based on an

20   examination, the "physician's opinion alone constitutes substantial evidence, because it rests on

21   his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149

22   (9th Cir. 2001). The opinions of non-examining professionals may also constitute substantial

23   evidence when the opinions are consistent with independent clinical findings or other evidence in

24   the record. See Thomas, 278 F.3d at 957. Social workers are not considered an acceptable

25   medical source. See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir.

26   2010). Nurse practitioners and physician assistants also are not acceptable medical sources. See

27   Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse

28   practitioners, physician assistants, and social workers may be discounted provided the ALJ

14

provides reasons germane to each source for doing so. See Popa v. Berryhill, 872 F.3d 901, 906

(9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R.

§ 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be

considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are

proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d at

830–31. Ordinarily, more weight is given to the opinion of a treating professional, who has a

greater opportunity to know and observe the patient as an individual, than the opinion of a non-

treating professional. See id.; Smolen, 80 F.3d at 1285; Winans v. Bowen, 853 F.2d 643, 647 (9th

Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v.

Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner

properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in

the record; and (2) clinical findings support the opinions. The Commissioner may reject an

uncontradicted opinion of a treating or examining medical professional only for "clear and

convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831.

While a treating professional's opinion generally is accorded superior weight, if it is contradicted

by an examining professional's opinion which is supported by different independent clinical

findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041

(9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected

only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d

at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts

and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.

See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate

reasons, the Commissioner must defer to the opinion of a treating or examining professional. See

Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence,

is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any

1   event, the Commissioner need not give weight to any conclusory opinion supported by minimal

2   clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating

3   physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

4   ## 2.    The ALJ's Weighing of Medical Opinions

5        The ALJ evaluated medical opinion evidence to determine Plaintiff's residual

6   functional capacity. See CAR 22–23. The ALJ gave great weight to the limitations opined by

7   State agency medical consult, Dr. Jaituni.[3] Id. Describing Dr. Jaituni's opinion, the ALJ wrote:

8
> [Dr. Jaituni] opined severe impairments of gastrointestinal system disorder
> and epilepsy (Exhibit 3A, p. 8). He opined the claimant was limited to lifting

9
> and/or carrying 20 pounds occasionally and 10 pounds frequently, standing
> and/or walking a total of four hours, sitting a total of six hours, occasionally

10
> climbing ramps/stairs, never climbing ladders/ropes/ scaffolds, frequently
> balancing,   occasionally   stooping,   frequently   kneeling,   frequently

11
> crouching, occasionally crawling, and avoiding moderate exposure to
> hazards (Exhibit 3A, pp. 11-12).

12

13   CAR 22–23. The ALJ gave Dr. Jaituni's opinion great weight because State agency medical

14   consultants are highly qualified physicians. Id. at 22. The ALJ also noted that agency medical

15   consultants are also experts in Social Security disability programs, the rules listed under 20 C.F.R.

16   § 416.927(e), and in evaluation of medical issues for disability claims under the Social Security

17   Act. Id. The ALJ noted that agency consultants review medical evidence in disability case make

18   findings of facts on medical issues; for example, on the severity of a claimant's impairments and

19   residual functional capacity. Id. at 22–23.

20        The ALJ determined that the limitations that Dr. Jaituni concluded were manifest

21   with Plaintiff were consistent with the medical records in the light of emergency room visits and

22   complaints, balanced with typically unremarkable exams and imaging reports. Id. at 23. The ALJ

23   specifically gave Dr. Jaituni greater weight than the opinion of the agency consultant who

24   reviewed Plaintiff's case at the initial level. Id. Dr. Jaituni, the ALJ noted, had the benefit of

25   reviewing records that had been unavailable at the time of the initial review. See id.

26        The ALJ also gave partial weight to the opinion of Guy Corkill, M.D., who

27   performed a consultative examination on October 27, 2015, and opined that Plaintiff could

28
---
[3] The ALJ referred to Dr. Jaituni only as the State agency medical consultant, but the parties do not dispute his identity.

generally perform medium work. CAR 23. In finding Plaintiff is more appropriately limited to light work, the ALJ took Plaintiff's subjective complaints into account. Id. The ALJ noted that Dr. Corkill's limitation of Plaintiff to medium activity was consistent with the unremarkable nature of his physical examination. Id. But the ALJ ultimately concurred with the agency's examining consultant, Dr. Jaituni, who restricted Plaintiff to light activity because of Plaintiff's complaints of headache and fatigue as documented in her medical records. Id.

Plaintiff challenges the ALJ's reliance at Step 4 on the opinion of non-examining agency physician, Dr. Jaituni, because it is based on only part of the record and is outdated. See ECF No. 12-1, pgs. 18–19. According to Plaintiff, an ALJ is not entitled to rely on "selected portions of the record to deny a claim but must review the record as whole and account for aspects favorable to a claimant." Id. at 19 (citing Widmark v. Barnhart, 454 F.3d 1063 (9th Cir. 2006)). In Plaintiff's view, it follows from the ALJ's duty to review the entire record that the ALJ cannot defer to an opinion based on only a portion of the record, unless an ALJ explains how the rest of the record would not alter the opinion. Id. Because the ALJ offered no such explanation, and because additional evidence was added to the record after Dr. Jaituni's review, the ALJ erred in relying on Dr. Jaituni's outdated opinion. Id. The new evidence exceeded 300 pages of emergency room and treatment records documents seizures, increased cyclical vomiting, and significant indications of pseudoseizures. Id. (citing CAR 573–902). The evidence postdates the conclusions of other agency reviews and precludes any determination that the ALJ justifiably relied on their conclusions in calculated Plaintiff's RFC. Id.

To Plaintiff's point on the ALJ's reliance on "outdated" opinions, Defendant contends that Plaintiff merely speculates that a physician—e.g., Dr. Jaituni—would have made different findings about her functional limitations had the physician reviewed later evidence. ECF No. 13, pgs. 20–21. In Defendant's view, Plaintiff overstates the later evidence, which includes numerous benign findings. Id. Providers documented Plaintiff's complaints and self-reports but also reported normal objective findings that did not suggest significant limitations; for example, Plaintiff in several instances denied having seizures or vomiting episodes for significant periods of time, and providers questions whether Plaintiff was truly experience seizures. Id. (citing CAR

764, 769, 780, 867). Plaintiff's speculation that any physician's opinion might have been different based upon later evidence is speculation that does not warrant reversal. Id. (citing Findley v. Saul, No. 1:18-cv-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 28, 2019) ("Plaintiff's suggestion that the records post-dating their opinions would have changed the opinions of the state agency physicians is mere speculation and not persuasive.").

Plaintiff is correct that ALJs may not simply selectively focus on aspects of the record supporting a determination of nondisability. See Ghanim v. Colvin, 763 F.3d 1154, 1164 (9th Cir. 2014); Widmark, 454 F.3d at 1164; Holohan v. Massanari, 246 F.3d 1195, 1205–08 (9th Cir. 2001). But this is not what the ALJ did in this instance. Plaintiff's specific argument that, as a necessary consequence of an ALJ's inability to cherry-pick the record, the ALJ cannot give significant weight to earlier opinions just because they did not have access to records later added to the record, is a nonstarter. First, Plaintiff cites no authority supporting that proposition. Second, calculation of a claimant's residual functional capacity is based upon all the evidence on record, not just a single medical opinion. See 20 C.F.R. § 416.945(a)(1); Garrison, 759 F.3d at 1012; Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006); Findley, 2019 WL 4072364, at *5. An ALJ's calculation of a claimant's RFC need not exactly reflect any one medical provider's assessment. See Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1222–23 (9th Cir. 2010) (stating that the ALJ permissibly incorporate physician's observations into RFC while rejecting the implication that plaintiff was unable to perform certain repetitive tasks); Findley, 2019 WL 4072364, at *5

The ALJ here considered all the relevant evidence.[4] Indeed, the ALJ considered— in multiple instances—*all* of the evidence postdating Plaintiff's Dr. Jaituni's opinion. See CAR 19–22 (citing Exs. 9F–15F). That evidence, in Plaintiff's favor, indicated factors weighing in favor of disability, such as reports of multiple seizures and related twitching and lethargy, a chronically ill appearance, and visits to the emergency because of severe vomiting and consequent dehydration and gastrointestinal tenderness. Id. But as the ALJ repeatedly described, the new evidence variously indicated the absence of abnormalities, normal memory, normal

---

[4] The ALJ properly considered all relevant evidence with the exception of other errors identified.

attention and cooperation, normal and unremarkable neurologic findings, improvements with medication, and the absence of neurological deficits. Id. The Court does itemize the postdated evidence piece by piece here. It is sufficient to say that the ALJ considered the postdated evidence, and that it generally indicated normal examinations. See id.

Plaintiff's argument that the ALJ impermissibly deferred to Dr. Jaituni's opinion is simply untrue. See CAR 19–23. The ALJ considered the record as a whole, including the evidence submitted after Dr. Jaituni rendered his opinion. Id. The ALJ noted evidence both weighing for and against Plaintiff. Id. Moreover, although Plaintiff gave Dr. Jaituni's opinion great weight, she did not give it *controlling* weight, which necessarily means that the ALJ did not merely acquiesce to the opinion. See CAR 23.

To the extent that Plaintiff argues that the records would have altered Dr. Jaituni's opinion, the suggestion is speculative at best. This is so especially considering the largely unremarkable nature of the records postdating Dr. Jaituni's opinion. See id. The argument is unpersuasive. E.g., Findley, 2019 WL 4072364, at *5.

Insofar as Plaintiff suggests that the ALJ did not give valid reasons to afford great weight to Dr. Jaituni's opinion, the Court disagrees. Generally, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. Garrison, 759 F.3d at 1012. If an examining physician's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence. Id. The weight given to the opinion of a non-examining physician depends on the degree to which the physician provides supporting explanations for their conclusions. Id.

Unless an ALJ gives the opinion of a treating physician controlling weight, ALJs must consider regulatory factors governing how much weight to give an opinion. E.g., 20 C.F.R § 416.927(c). Factors to consider include the extent of an examining relationship, how well conclusions are supported, consistency with the record, and how familiar a physician is with Social Security programs. 20 C.F.R. § 416.927(c)(1)–(6). The findings of a non-treating, non-examining physician can amount to substantial evidence provided that the opinions are consistent

with independent clinical findings or other evidence on the record. Thomas, 278 F.3d at 957; Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996); see Lester, 81 F.3d at 831–32.

When rejecting a medical opinion, an ALJs must explicitly set forth the rejection of that medical opinion. Garrison, 759 F.3d at 1012. An ALJ errs in rejecting an opinion by ignoring it or by crediting one medical opinion over another without offering specific and legitimate reasons (e.g., specifically explaining that other evidence is more persuasive). See id. An ALJ can satisfy the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Id.

Although the ALJ could have been more exhaustive in explaining her weighing of medical opinions, the Court concludes that her conclusions are legally sufficient. Substantial evidence supports the ALJ's assignment of significant weight to Dr. Jaituni's opinion. First, she gave specific and legitimate reasons for giving less weight to Dr. Corkill's examining opinion. See CAR 23. The ALJ gave his opinion less weight because she found it to be less consistent with the medical record than was Dr. Jaituni's opinion.[5] See id. Dr. Jaituni's opinion more completely accounted for Plaintiff's complaints of headaches and fatigue, and thus a more appropriate limitation to light activity, than did Dr. Corkill's. Id. Rejection of an opinion for inconsistency with the medical record or contradiction by the reports of another physician are valid specific and legitimate reasons. See, e.g., 20 C.F.R. § 416.927(c)(4); Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020); Thomas, 278 F.3d at 956–57; see Garrison, 759 F.3d at 1012.

---

[5] The ALJ did not use any "magic words" stating that Dr. Corkill's opinion was less consistent with the record. See CAR 23. But, in stating that Dr. Corkill's opinion did not fully account for Plaintiff's complaints of headache and fatigue, inconsistency with the record is the necessary implication of the ALJ's conclusion. See id. Although the Court cannot uphold an ALJ's decision based upon grounds on which the ALJ did not rely, nor is the Court deprived of ability to draw specific and legitimate inferences from the ALJ's decision if those inferences are sufficiently there to be drawn. Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017); Magallenes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989).

1    Second, the ALJ considered factors from the regulations.[6] See Hamm v. Saul, 804

2    F. App'x 810, 811 (9th Cir. 2020). She credited Dr. Jaituni's opinion because he was qualified

3    and an expert in Social Security disability programs, and because his determinations of Plaintiff's

4    limitations were consistent with the medical records when considering Plaintiff's complains

5    balanced against generally unremarkable findings. CAR 22–23. The ALJ also found Dr. Jaituni's

6    opinion to be consistent with the medical record, specifically in the light of Plaintiff's

7    documented emergency room visits and recorded complaints as balanced against typically

8    unremarkable examinations. CAR 23. The ALJ's reasons are expressly valid reasons for giving a

9    non-examining physician's opinion significant weight. 20 C.F.R. § 416.927(c)(4), (6).

10   The ALJ did not err in assigning great weight to Dr. Jaituni's opinion.

11   **C.     Credibility**

12   Plaintiff contends that the ALJ erred in her assessment of weight to Plaintiff's

13   subjective complaints because the ALJ's reasoning for discounting her complaints are not

14   supported by substantial evidence. ECF No. 12-1 at 19–23.

15   **1.     Standard for Weighing a Claimant's Credibility:**

16   The Commissioner determines whether a disability applicant is credible, and the

17   Court defers to the Commissioner's discretion if the Commissioner used the proper process and

18   provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit

19   credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903

20   F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d

21   821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible

22   and what evidence undermines the testimony. See id. Moreover, unless there is affirmative

23   evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

24   credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d

---

[6] To the extent it was error for the ALJ to fail to explicitly list and assess *every* regulatory factor in considering Dr. Jaituni's opinion (see 20 C.F.R. § 416.927(c)), any such error was harmless. Tommasetti, 533 F.3d at 1038 (Harmless error exists "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (citation and internal quotation marks omitted)); see also Marsh v. Colvin, 792 F.3d 1170, 1172–73 (9th Cir. 2015); Castillo v. Saul, No. 19-35159, 2021 WL 981429, at *1 (9th Cir. Mar. 16, 2021).

1   1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007),

2   and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

3          If there is objective medical evidence of an underlying impairment, the

4   Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely

5   because they are unsupported by objective medical evidence. <u>See Bunnell v. Sullivan</u>, 947 F.2d

6   341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

7              The claimant need not produce objective medical evidence of the
            [symptom] itself, or the severity thereof. Nor must the claimant produce
8            objective medical evidence of the causal relationship between the medically
            determinable impairment and the symptom. By requiring that the medical
9            impairment "could reasonably be expected to produce" pain or another
            symptom, the <u>Cotton</u> test requires only that the causal relationship be a
10           reasonable inference, not a medically proven phenomenon.

11   80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>,

12   799 F.2d 1403 (9th Cir. 1986)).

13         The Commissioner may, however, consider the nature of the symptoms alleged,

14   including aggravating factors, medication, treatment, and functional restrictions. <u>See Bunnell</u>, 947

15   F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's

16   reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2)

17   unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

18   of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-

19   party testimony about the nature, severity, and effect of symptoms. <u>See Smolen</u>, 80 F.3d at 1284

20   (citations omitted). It is also appropriate to consider whether the claimant cooperated during

21   physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u>

22   <u>Thomas</u>, 278 F.3d 947, 958–59. If the claimant testifies as to symptoms greater than would

23   normally be produced by a given impairment, the ALJ may disbelieve that testimony provided

24   specific findings are made. <u>See Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876

25   F.2d 683, 687 (9th Cir. 1989)).

26         **2.      The ALJ's Decision:**

27         Plaintiff raises a few specific issues in challenging the ALJ's discrediting of

28   Plaintiff's symptom testimony. <u>See</u> ECF No. 12-1 at 19–23. Plaintiff contends that: (1) contrary

1    to the ALJ's finding, Plaintiff's subjective complaints during medical visits show an inability to

2    sustain full-time work; (2) the ALJ's analysis fails to account for evidence satisfying Listing No.

3    11.02B or a proper evaluation of opinion evidence; and (3) the ALJ improperly referenced "drug-

4    seeking behavior." ECF No. 12-1 at 19–23. See id. at 21-23.

5            But, in the Court's reading, Plaintiff also raises the general argument that the

6    ALJ's analysis is insufficient because it does not sufficiently reveal her consideration of

7    Plaintiff's testimony and fails to link the testimony found not credible to the evidence found to

8    undermine it. See ECF No. 12-1, pgs. 20-21. For example, Plaintiff writes: "[A]fter [summarizing

9    the evidence,] the ALJ turned to the opinions and the lay witness evidence, then went directly to a

10   concluding paragraph summarizing the ALJ's already stated reasoning . . . the ALJ failed to

11   reveal consideration of most of the relevant regulatory factors." Id. at 21. Plaintiff's point is well-

12   taken.

13           At Step 4, the ALJ evaluated Plaintiff's credibility in order to determine her

14   residual functional capacity (RFC). See CAR 17-22. The ALJ broadly summarized Plaintiff's

15   statements, laying out her testimony in significant detail. CAR 17–18. By way of brief example,

16   the ALJ notes that Plaintiff testified "epilepsy and cyclic vomiting syndrome limited her ability to

17   work . . .  she does not know when her cyclic vomiting symptoms will occur . . . She reported she

18   has petite mal seizures almost daily but when she vomits, she is unable to keep her medications

19   down and she has grand mal seizures." CAR 17. The ALJ's summary of Plaintiff's subjective

20   testimony continues on in that manner. CAR 17–18

21           The ALJ then separately outlined the medical record, including the opinion

22   evidence discussed above. See CAR 18–23. The ALJ, for example, summarized Plaintiff's

23   extensive history of emergency rooms visit for cyclical vomiting symptoms and seizures. Id. She

24   observed instances of both severe and unremarkable symptoms. Id. The ALJ noted significant

25   dehydration and distress from vomiting, but also generally normal neurological findings and an

26   absence of neurological deficits when seeking treatment after seizures. CAR 19–20. The ALJ

27   made a point of detailing Plaintiff's contemporaneous subjective reports of symptoms that

28   Plaintiff's physicians recorded. E.g., CAR 18–22. She observed Plaintiff's reports of multiple

23

1    seizures per week, and her reports of an inability to keep her seizure medication down because of

2    vomiting. Id. She noted evidence of drug-seeking behavior. CAR 19, 23.

3             The ALJ then concluded that, in sum, Plaintiff's medical records mainly revealed

4    emergency room visits for cyclic vomiting, seizure control, and narcotics. CAR 23. There was

5    evidence of drug-seeking behavior, controlled seizures when Plaintiff has taken Keppra, refusal to

6    stop using marijuana despite recommendations, and no evidence of malnutrition. CAR 22–23.

7    Almost all of Plaintiff's physical examinations have been normal and imaging reports generally

8    showed no abnormalities. CAR 23.

9             To the ALJ's credit, her summary of Plaintiff's medical history is detailed. See

10    CAR 18–22. The ALJ summarized Plaintiff's subjective reports, determined that Plaintiff's

11    testimony was not entirely substantiated by the medical evidence, and then meticulously

12    summarized the medical evidence. See id. But the separate summaries of Plaintiff's subjective,

13    inferentially tied together with a brief conclusion are insufficient.  See CAR 22–23; Lambert v.

14    Saul, 980 F.3d 1266, 1277–78 (9th Cir. 2020); Brown-Hunter, 806 F.3d at 492–94; see also

15    Holcomb v. Saul, 832 F. App'x 505, 506 (9th Cir. 2020). An ALJ need not undertake a line-by-

16    line deconstruction of a claimant's testimony, but under Ninth Circuit precedent, summary and

17    implied discrediting of testimony is not enough. See Lambert, 980 F.3d 1277–78; Holcomb, 832

18    F. App'x at 506; Brown-Hunter, 806 F.3d at 492–94. Although the ALJ included Plaintiff's

19    historical subjective complaints, she does not adequately link Plaintiff's testimony to portions of

20    the record supporting the adverse credibility decision. See, e.g., Brown-Hunter, 806 F.3d at 492–

21    94; Holcomb, 832 F. App'x at 506.

22             The ALJ must provide clear and convincing reasons to discount Plaintiff's

23    testimony. See Brown-Hunter, 806 F.3d at 493. A summary of medical evidence, even preceded

24    by a summary of testimony and then followed by a conclusion restating what the evidence shows,

25    is not the same as offering clear and convincing reasons for discounting testimony. Id. at 494;

26    Holcomb, 832 F. App'x at 506. Although ALJ concluded that the record shows largely normal

27    exams, inferentially undermining Plaintiff's testimony, the ALJ neglected to link Plaintiff's

28    testimony to specific medical records and explain why those records contradicted Plaintiff's

1   testimony. CAR 18–23. Indeed, the ALJ did not discuss Plaintiff's symptom testimony while

2   summarizing the medical evidence. Id.

3           The Court is constrained to review only those reasons that the ALJ asserted for her

4   decision. Brown-Hunter, 806 F.3d at 492; Holcomb, 832 F. App'x at 506. Because the ALJ did

5   not specify her reasons for discrediting Plaintiff's testimony, the Court is unable to meaningfully

6   review her apparent reasons without improperly substituting its conclusions for the ALJ's or

7   speculating as to what the basis of her conclusions were. E.g., Brown-Hunter, 806 F.3d at 492–

8   95. The Court cannot review whether the ALJ provided specific, clear, and convincing reasons for

9   rejecting Plaintiff's testimony because the ALJ never identified *which* testimony she found not

10  credible, and never explained *which* evidence contradicted that testimony. Lambert, 980 F.3d at

11  1277; Brown-Hunter, 806 F.3d at 494. The ALJ's failure to specify the reasons for discrediting

12  Plaintiff's testimony was reversible error. See Brown-Hunter, 806 F.3d at 493–94; Holcomb, 832

13  F. App'x at 506.

14          For the same reasons, the Court cannot say that the error was harmless. See

15  Brown-Hunter, 806 F.3d at 494–95; Lambert, 980 F.3d at 1277–78. "An error harmless only if it

16  is 'inconsequential to the ultimate non-disability determination,' or if despite the legal error, 'the

17  agency's path may reasonably be discerned.'" Brown-Hunter, 806 F.3d at 494 (citation omitted).

18  But here, the Court can neither discern the ALJ's path nor definitively say that the error was

19  inconsequential to her ultimate determination of non-disability. See id. As stated, the ALJ did not

20  provide reviewable reasons indicating why Plaintiff's testimony is not credible. See id.; CAR 18–

21  23. The ALJ did not specify which testimony she found not credible and why. See Lambert, 980

22  F.3d at 1277; Brown-Hunter, 806 F.3d at 494. This "falls short of meeting the ALJ's

23  responsibility to provide reasons for which she made an adverse determination. Brown-Hunter,

24  806 F.3d at 494; Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014).

25          The Court accordingly remands to the ALJ for appropriate, specific reasoning in

26  reviewing Plaintiff's testimony consistent with the above.[7]

27

28  ---
    [7] The Court reviewed Defendant's brief and arguments. Defendant disagrees with the clear and convincing standard. ECF No. 13, pg. 22 n.9. But, as Defendant notes, the Court is bound by Ninth Circuit precedent. Id.

1      **D.      Lay Witness Evidence**

2              In determining whether a claimant is disabled, an ALJ generally must consider lay

3      witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915,

4      919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay

5      testimony as to a claimant's symptoms or how an impairment affects ability to work is competent

6      evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100

7      F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of

8      lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919.

9      When rejecting third party statements which are similar in nature to the statements of plaintiff, the

10     ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See

11     Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

12     rejection of a third-party family member's testimony, which was similar to the claimant's, for the

13     same reasons given for rejection of the claimant's complaints).

14             At Step 4, the ALJ considered third-party statements from Plaintiff's husband and

15     daughter, Ms. McCracken. As to this lay witness evidence, the ALJ stated:

16             The undersigned considered the third-party statements by the claimant's
       husband and daughter, and gave these statements less weight. While the
17     record shows the existence of some of the symptoms observed by them, the
       undersigned gave greater weight to the objective medical evidence as well
18     as the opinions and observations by medical doctors in this case. The
       doctors are medically trained to make exacting observations as to dates,
19     frequencies, types, and degrees of medical signs and symptoms, or of the
       frequency or intensity off unusual moods or mannerisms. Indeed, one doctor
20     at an emergency room visit described being unsure of what her seizure-like
       activity was, and the examiner from Stanford Epilepsy Center noted these
21     events as neurobehavioral.

22     CAR 23.

23             Plaintiff's husband submitted a brief statement in support of Plaintiff's case,

24     writing that cyclical vomiting syndrome and epilepsy impose significant limitations on Plaintiff.

25     CAR 284. He writes that Plaintiff has no way to tell when an epileptic or vomiting episode will

26     interrupt her life, and that Plaintiff may feel fine one moment and suddenly have grand mal

27     seizures or start vomiting uncontrollably. Id. Her vomiting exacerbates her grand mal seizures

28     because she is unable to keep down her epilepsy medication. Id. At one point, Plaintiff's seizures

                                                    26

caused her to lose all her memories, which took months to resurface. Id. She still does not

recollect significant portions of her past. Id. She could not recall her husband or children. Id.

Plaintiff's seizures are debilitating because they can render her unable to continue with regular

life for months at a time. Id. She is unable to drive. Id. Plaintiff must frequently go to the

emergency room. Id.

Plaintiff's daughter submitted a similar statement. Id. at 285–86. She writes that

Plaintiff's symptoms are significantly limiting. Id. at 285. Plaintiff has several petit mal seizures

per week, and her cyclical vomiting intensifies her seizures because she cannot keep medicine

down. Id. Seizures leave Plaintiff tired and fog her memory. Id. Even after getting fluids in the

emergency room after vomiting, it can take a month before Plaintiff can do anything like walk

normal distances, cook, or eat. Id. When sick, Plaintiff loses significant weight and becomes

weak. Id. Plaintiff has missed important family events because of her symptoms. Id. at 285–86.

Concerning her family's statements and the ALJ's discrediting of their content,

Plaintiff argues:

> In a disability claim bases [*sic*] on seizures, lay witness such as
> that provided forms key evidence bearing on the frequency and impact of
> Ms. Facey's seizures as well as her grand mal seizures is particularly
> important. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.00B)(1)
> (stating that both medical and non-medical evidence is needed, including
> "statements you or others make about your impairments, your restrictions,
> your daily activities, or your efforts to work). Accordingly, the ALJ's
> suggestion that evidence about the frequency or intensity of a claimant's
> symptoms provided by lay witnesses should be disregarded in favor of
> evidence from doctors, who are "trained to make exacting observations as
> to dates, frequencies, types and degrees" of symptoms is not well taken.
> (Tr. 23). In fact, doctors have very limited time available to spend with
> each patient, and thus often have much less opportunity to observe the
> frequency and intensity of a patient's symptoms compared to a lay
> witness. In any event, a number of Ms. Facey's seizures have been
> observed by medical staff as described above, the lay witness information
> from her husband and daughter remains very important evidence in
> determining the frequency and severity of these episodes. It is thus not
> necessarily a matter of choosing to credit medical sources or lay witnesses,
> as the ALJ assumed, but of using the lay witness evidence in conjunction
> with the other evidence to ascertain the full effect of Ms. Facey's
> conditions.
>      The lay evidence from Ms. Facey's husband and daughter is key
> evidence that should have been discussed and properly evaluated by the
> ALJ. This was not harmless error. *Robbins v. Soc. Sec. Admin.*, 466 F.3d
> 880 (9th Cir. 2006) (refusing to find the ALJ's failure to discuss and
> properly evaluate lay testimony harmless because "the ALJ, when fully

1    crediting the testimony, could have reached a different disability
     determination"). To the contrary, the evidence indicates disabling
2    limitations flowing from Ms. Facey's combination of cyclic vomiting and
     seizures, while crediting the lay witness testimony as to seizure frequency
3    alone would support a finding of disability. Hence, to the extent the instant
     case is not remanded with instructions for an award of benefits, the Court
4    should remand with directions to fully and properly consider the lay
     evidence.
5
ECF No. 12-1, pgs. 25-26.
6
7          The Court is not persuaded by Plaintiff's specific positions. Nor, however, is the

8    Court persuaded by Defendant's rebuttal. In pertinent sum, Defendant replies that the ALJ

9    permissibly rejected the third-party statements from Plaintiff's husband and daughter because

10   ALJs may reject lay witness testimony that is inconsistent with the record. See ECF No. 13 at 26

11   (citing Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)). But this is not what the ALJ

12   did. The ALJ rejected the testimony because the record substantiated "some of the conditions

13   observed by them." CAR 23. The ALJ did not state that she found the third-party statements

14   inconsistent with the record, she gave them less weight because they were only partially

15   corroborated by the overall record. Id.

16         A lack of corroboration by the record is not an adequate reason to reject lay

17   witness testimony. Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017); Bruce v. Astrue, 557

18   F.3d 1113, 1116 (9th Cir. 2009). The Court notes a distinction here. An ALJ *can* reject lay

19   testimony that is *inconsistent* with the record. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.

20   2006); Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); Lewis v. Apfel, 236 F.3d 503,

21   511 (9th Cir. 2001). But lack of support from the overall medical evidence is an improper basis on

22   which to disregard lay opinions. Diedrich, 874 F.3d at 640; Bruce, 557 F.3d at 1116. The Ninth

23   Circuit has recognized the difference. Burkett v. Saul, 806 F. App'x 509, 512–13 (9th Cir. 2020).

24         Here, the ALJ's stated reasons for rejecting the statements from Plaintiff's husband

25   and daughter fall closer to cases like Diedrich and Bruce than to cases like Bayliss or Lewis. Cf.

26   Burkett, 806 F. App'x at 512–13. That the ALJ determined, moreover, that the opinions of

27   medical doctors were entitled to greater weight is not a reason *germane to each witness* that

28

                                            28

supports disregard of Plaintiff's husband's and daughter's statements. The Court concludes that the ALJ erred in failing to provide germane reasons for discounting the third-party statement.[8]

The Court concludes that remand to the ALJ is warranted for any appropriate consideration of lay testimony that is consistent with the above analysis.

### IV. CONCLUSION

After having found error, the Court retains discretion to remand a case for additional evidence or simply direct an award of benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017). A case may be remanded under the applicable "credit-as-true" rule for an award of benefits where: (1) the record has been fully developed and further administrative proceedings would not be useful; (2) the ALJ has not provided legally adequate reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled. Garrison, 759 F.3d at 1020.

Even if all the conditions of the "credit-as-true" rule are met, the Court retains flexibility to remand if the overall record creates serious doubt about whether a claimant is disabled within the meaning of the Social Security Act. Id. at 1020–21; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler, 775 F.3d at 1105 ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, remand is appropriate to allow the ALJ to reanalyze Plaintiff's claims in the light of the evidence and errors noted above. This matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

/ / /

---

[8] Considering the record as a whole, that corroboration is not a permissible reason to reject lay testimony, and considering the nature of Plaintiff's husband's and daughter's testimony, the Court determines that it cannot conclude that the ALJ's error in weighing their testimony was inconsequential to the ultimate disability determination. The Court thus concludes that the error in failing to provide germane reasons for discrediting the lay testimony was not harmless. See, e.g., Carmickle, 533 F.3d at 1161–63; see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195–97 (9th Cir. 2004)

1      Accordingly, IT IS HEREBY ORDERED that:

2          1.      Plaintiff's motion for summary judgment (ECF No. 12-1) is **GRANTED**.

3          2.      Defendant's motion for summary judgment (ECF No. 13) is **DENIED**.

4          3.      The Commissioner's final decision is **REVERSED**.

5          4.      This case is remanded for further proceedings consistent with this order.

6          4.      The Clerk of the Court is directed to enter judgment and close this file.

7

8      Dated:  March 30, 2021

9

10                                                    DENNIS M. COTA
                                                      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28